UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

------------------------------------------------------------------------x

JOSE CORDOVA,

                      Plaintiff,        **COMPLAINT**

      -against-

MEDITERRANEAN SHIPPING COMPANY
(USA), INC.; ALESSANDRO MOLASCHI;     Jury Trial Demanded
AMANDA ALMEIDA,

                      Defendants.

------------------------------------------------------------------------x

**PRELIMINARY STATEMENT**

1. Plaintiff, who was 64 years-old at all relevant times herein, brings this employment discrimination action against his former employer, Mediterranean Shipping Company (USA), Inc. ("MSC"), alleging gender and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Florida Civil Rights Act, Fla. Stat. § 760.10 ("FCRA"). Plaintiff also asserts state law claims of defamation and tortious interference with a business relationship against MSC; MSC Miami Branch Manager, Alessandro Molaschi; and Amanda Almeida, a MSC probationary employee who was involved with Molaschi in an improper relationship, and acting in concert with Molaschi, falsely accused plaintiff of touching her head in an inappropriate manner for the purpose

of unlawfully terminating an older employee. Plaintiff, the oldest employee in the MSC Miami Branch Office, was terminated for discriminatory reasons, although he had worked for MSC for 16 years, had always received positive performance reviews, and had never been accused of workplace misconduct or inappropriate behavior towards a female employee. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1343, as this action asserts violations of Title VII and the ADEA, and therefore raises federal questions regarding the deprivation of plaintiff's rights.

3. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide his claims under the FCRA and Florida law, which form part of the same case and controversy as plaintiff's federal claims under Article III of the United States Constitution.

4. Venue is proper in the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b) and (c), because defendants are located in this District, and the incident in question occurred in this District.

## JURY TRIAL

5. Pursuant to Fed. R. Civ. P. 38, plaintiff demands a jury trial.

## ADMINISTRATIVE REQUIREMENTS

6. Plaintiff timely filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). This charge was dual filed with the Florida Commission on Human Relations pursuant to its work share agreement with the EEOC.

7. The EEOC issued plaintiff a right to sue letter on September 5, 2022, allowing him to bring suit within 90 days of his receipt of the letter. The EEOC did not make a finding as to the merits of the charge.

## PARTIES

8. Plaintiff is a resident of the State of Florida.

9. Defendant MSC is a corporation authorized to conduct business in Florida. Defendant Molaschi was plaintiff's supervisor and the MSC Miami Branch Manager at all relevant times herein and his conduct is thus imputed to MSC. Defendant Almeida was an employee of MSC at all relevant times herein.

## STATEMENT OF FACTS

10. Plaintiff began working for defendant MSC in 2006 in the Miami office.

11. At all relevant times in 2021, plaintiff was a 64 year-old man.

12. At all relevant times, plaintiff was performing at a satisfactory level, was qualified for his position and had no history of inappropriate behavior at MSC.

13. In 2021, plaintiff worked in the Miami office, which had approximately 80 employees. At this time, plaintiff was the Collections & Freight Cashier Manager.

14. All of the employees in the Miami office were younger than plaintiff, including his supervisor and Branch Manager, Alessandro Molaschi. In the last few years, the Miami office hired only employees younger than plaintiff.

15. Plaintiff observed that Molaschi was involved in an inappropriate, flirtatious, and perhaps romantic, relationship with a new employee, Amanda Almeida, who was younger than plaintiff, and who, as a new employee, was on probation.

16. Upon information and belief, MSC, acting in concert with Molaschi, and possibly other managers, wanted to get rid of an older employee like plaintiff. In any event, as a manager, Molaschi's conduct is imputed to MSC,

17. Upon information and belief, Molaschi schemed with Almeida to have plaintiff accused of inappropriate touching so that plaintiff could be terminated.

18. On the day of the alleged incident with Almeida, October 13, 2021, plaintiff was off from work, but Molaschi asked plaintiff to come to the office to assist, and plaintiff agreed. This raises the inference that plaintiff was set-up so that defendants could terminate plaintiff.

19. On or about October 13, 2021. Almeida falsely accused plaintiff of touching her inappropriately that day shortly before noon:

> Dear Alessandro,
>
> Please see below the explanation in details:
>
> > On Wednesday, October 13th between 11:30am-11:50am Jose came to my desk to show me something related to what I was working on at that moment.
> >
> > While he was standing up next to me (to my left), he accidentally dropped my pen on the floor. I immediately bent down (while I stayed seated) to pick it up.
> >
> > As I had my head bent down, he pushed my head down with his hand and proceeded to say in Portuguese: "**Fica**" - which in English means "**Stay**".
> >
> > I was shocked and felt uncomfortable right away. When I sat back upright, I told him in an upset tone "Don't do that again". He reacted by laughing like it was a joke and replied, "Wasn't your back hurting?" and proceeded to laugh again. I said "It was on Monday. Don't do it again". He brushed it off by continuing to explain what he was supposed to explain about the process I was working on.
>
> Kind Regards,
> **Amanda Almeida**

20. Nothing was said to plaintiff about this on October 13 or 14, 2021.

21. MSC and Molaschi telephoned plaintiff during the morning of October 15, 2021, and provided plaintiff with a Formal Warning Notice, dated October 15, 2021. The Warning Notice was clear that defendants had yet to investigate the incident, but that plaintiff was to work from home and not come to

5

the office until the investigation was concluded.  The document promised a "thorough" investigation.

22.  Almeida never alleged that plaintiff touched a private part of her body, said anything sexual to her, or that he made her feel uncomfortable more than once.

23.  Not only was a "thorough" investigation never conducted, but plaintiff was never asked for his version of what took place.

24.  During the morning of December 2, 2021, over a month later, MSC, Molaschi, MSC's Human Resources Department, with the approval of the President of MSC, fired plaintiff.

25.  Molaschi emailed plaintiff the termination letter the same morning.  On December 2, 2021, plaintiff responded to Molaschi's email denying the false allegations; stating that this was the "worst nightmare of his life;" that he was willing to take a polygraph test; that, after many years of positive performance, and expecting a promotion and a raise, he would never do something to jeopardize his career; that he has 6 children, 3 of whom are in college, a mortgage, and a car lease; and that he could not obtain unemployment compensation because he was not going to misrepresent that MSC had not given him a warning notice (albeit falsely) on October 15, 2021, which precludes benefits.

26. Defendants MSC and Molaschi terminated plaintiff because they wished to get rid of an older employee, and plaintiff was also subjected to gender and age discrimination because Almeida, who was a new probationary employee, engaged in inappropriate conduct in the office with Molaschi and was not terminated.  Also, Molaschi, who is younger than plaintiff, engaged in an inappropriate relationship with Almeida in the office, but was not fired, and MSC and Molaschi fired plaintiff for allegedly engaging in the same type of conduct.

27. MSC's Equal Employment Opportunity Policy states that MSC's "standards will be implemented *consistently* by the Company to ensure that equality is afforded to all applicants and employees.  *All* employees are expected to comply with the Company's Equal Employment Opportunity Policy."  "This policy covers *all* individuals in the workplace.  The Company does not tolerate, condone, or allow sexual or other unlawful harassment, whether engaged in by fellow employees, *supervisors*, outside clients, or other non-employees who conduct business with the Company.  The Company encourages reporting of all incidents of sexual or other unlawful harassment, *regardless of who the offender may be*, or the offender's relationship to the Company."  Despite this policy, the younger Molaschi was not terminated for his inappropriate contact with Almeida in the office, and Almeida was not terminated.

28. Also, MSC's Equal Employment Opportunity Policy states that if an employee is accused of sexual harassment, there are penalties short of termination: "Appropriate discipline, *up to* and including immediate discharge, will be taken against any employee who violates this policy." Although plaintiff worked at the company for 16 years without any negative history, MSC and Molaschi levied the most severe penalty against plaintiff. This severe and disproportionate discipline raises an inference of discrimination.

29. As a result of the defendants' actions, plaintiff suffered emotional distress, fear, embarrassment, humiliation, anxiety, damage to his personal and professional reputation, and financial loss. Plaintiff eventually obtained a position after his termination, but for less pay and benefits. Plaintiff has children in college, a mortgage and other expenses, and had to continue working and suffered and continues to suffer financial hardship.

## **FIRST CLAIM**
### **(Gender Discrimination under Title VII)**
### **(Against Defendant MSC)**

30. Plaintiff repeats the foregoing allegations.

31. Defendant MSC discriminated against plaintiff, in violation of Title VII, by treating plaintiff differently as to the terms and conditions of his employment based on his gender and the false stereotype that a male employee's

denial of inappropriate touching is not to be afforded the same weight as his accuser's allegation, even where the employer knows that the male employee is a credible and qualified individual, based on his history and long term employment, and much less is known about the accuser.

32. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to defendant MSC.

33. Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

34. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## SECOND CLAIM

**(Age Discrimination under the ADEA)**

**(Against Defendant MSC)**

35. Plaintiff repeats the foregoing allegations.

36. Defendant MSC discriminated against plaintiff on the basis of his age, in violation of the ADEA, by treating plaintiff differently as to the terms and conditions of his employment based on the fact that he was 64 years-old at all relevant times.

37. Because the individuals who perpetrated the discrimination were managers and supervisors, their conduct is imputed to defendant MSC.

38. Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

39. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## THIRD CLAIM

### (Gender Discrimination under the FCRA)

### (Against Defendant MSC)

40. Plaintiff repeats the foregoing allegations.

41. Defendants discriminated against plaintiff, in violation of the FCRA, on the basis of his gender, and the false stereotype that a male employee's denial of inappropriate touching is not to be afforded the same weight as his accuser's allegation, even where the employer knows that the male employee is a credible and qualified individual, based on his history and long term employment, and much less is known about the accuser.

42. Because the individuals who perpetrated the discrimination were managers and supervisors, acting within the scope of their employment, their conduct is imputed to defendant MSC.

43. Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

44. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM

### (Age Discrimination under the FCRA)

### (Against Defendant MSC)

45. Plaintiff repeats the foregoing allegations.

46. Defendant MSC discriminated against plaintiff on the basis of his age, in violation of the FCRA, by treating plaintiff differently as to the terms and conditions of his employment based on the fact that he was 64 years-old at all relevant times.

47. Because the individuals who perpetrated the discrimination were managers and supervisors, acting within the scope of their employment, their conduct is imputed to defendant MSC.

48. Defendant's conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

49. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

## FIFTH CLAIM

## (Defamation Per Se)

## (Against all Defendants)

50. Plaintiff repeats the foregoing allegations.

51. Defendants published a false statement about the plaintiff to a third party and plaintiff suffered damages as a result of the publication. *Paulson v. Cosmetic Dermatology, Inc.*, No. 17-20094-Civ-Scola, 2017 U.S. Dist. LEXIS 88031, at *6 (S.D. Fla. June 8, 2017).

52. The statement at issue was of a nature that it tended to subject plaintiff to hatred, distrust, ridicule, contempt, or disgrace. *Id.* at *7-8. Further, the statement was of a nature that it tended to injure plaintiff in his office, occupation, business, or employment and which, in natural and proximate consequence, will necessarily cause injury. The statement also imputed to plaintiff conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office. *Id.* at *8.

53. MSC is vicariously liable for its employees' conduct in defaming plaintiff.

54. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

55. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

### SIXTH CLAIM

**(Tortious Interference with Plaintiff's Business Relationship)**

**(Against all Defendants)**

56. Plaintiff repeats the foregoing allegations.

57. To state a claim for tortious interference with a business relationship, a plaintiff must establish: (1) the existence of a business relationship under which the plaintiff has rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship; (4) by a third party; and (5) damage to the plaintiff caused by the interference. *Paulson v. Cosmetic Dermatology, Inc.*, No. 17-20094-Civ-Scola, 2017 U.S. Dist. LEXIS 88031, at *12 (S.D. Fla. June 8, 2017).

58. The privilege to interfere is a valid defense to a claim for tortious interference only where the interference was not done for some improper purpose. The right to interfere in a relationship, as granted to interested parties, is qualified by the obligation to proceed in good faith. This good faith requirement disqualifies parties from asserting the privilege when they, as here, have acted with malicious or conspiratorial motives. *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001).

59. Under Florida law, an at-will relationship can satisfy the first element of a claim for tortious interference with a business relationship. *Rudnick v. Sears, Roebuck & Co.*, 358 F. Supp. 2d 1201, 1205 (S.D. Fla. 2005).

60. Defendants interfered with plaintiff's employment with MSC for malicious, discriminatory, and bad faith reasons; therefore, no privilege is available to them.

61. MSC is vicariously liable for its employees' conduct in having plaintiff unjustly terminated.

62. Defendants' conduct caused plaintiff to suffer various personal injuries, including the injuries described herein.

63. As a result of the foregoing, plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, plaintiff requests the following relief jointly and severally against the defendants:

    a. Compensatory damages in an amount to be determined by a jury;

    b. Back pay;

    c. Punitive damages in an amount to be determined by a jury;

    d. Attorney's fees and costs;

    e. Prejudgment and other lawful interest;

    f. Such other and further relief as the Court may deem just and proper.

DATED:  September 7, 2022

              */s/ Richard Cardinale*

              _____
              RICHARD CARDINALE (FBN 143332)
              Attorney at Law
              26 Court Street, Suite # 1507
              Brooklyn, New York 11242
              (718) 624-9391
              richcardinale@gmail.com